OPINION *Page 2 
{¶ } Defendant-appellant Rozell Romont Woodson appeals the March 14, 2007 Judgment of the Stark County Court of Common Pleas overruling his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} In January 2007, the Stark County Grand Jury indicted appellant and his co-defendant George Taylor, on one count of trafficking in cocaine, one count of possession of cocaine, and one count of having weapons under disability.
 {¶ 3} Before trial, appellant and co-defendant Taylor filed motions to suppress. Appellant's motion alleged that there was no lawful cause to detain, arrest, or search him or his vehicle, that the drug dog was not properly credentialed and did not give positive indicators, and that statements obtained from him were obtained in violation of his fifth, sixth and fourteenth amendment rights. The State presented three witnesses at the suppression hearing — Troopers Shawn Baskerville and Scott Louive of the Ohio State Highway Patrol and Officer Eric Haynam of the Jackson Township Police Department. Appellant and Taylor presented no evidence.
 {¶ 4} At the evidentiary hearing on appellant's motion to suppress, the following facts were established:
 {¶ 5} During the early morning hours of December 29, 2006, Trooper Shawn Baskerville was running radar on Interstate 77. At approximately 3:49 a.m., a car driven by appellant passed the Trooper's location at 88 miles an hour. Trooper Baskerville activated the cruiser's overhead lights and siren. Appellant pulled over in response. Trooper Baskerville approached the passenger side of the car and saw the *Page 3 
co-defendant Taylor with a tray on his lap "busting the guts out of a cigar." Because he received training in drug interdiction, Trooper Baskerville was aware that drug users would remove the tobacco and cardboard out of a cigar or "bust the guts" and replace it with marijuana. Upon seeing what Taylor was doing, Trooper Baskerville read both Taylor and appellant the Miranda warnings. Trooper Baskerville then inquired if there was any marijuana in the car; both men denied having marijuana. Trooper Baskerville did not see or smell marijuana.
 {¶ 6} Trooper Baskerville then asked appellant for his driver's license, proof of insurance and registration. Because appellant could not produce any of these items, Trooper Baskerville asked appellant to exit the car and take a seat in the back of his cruiser while he checked his information.
 {¶ 7} Appellant told Trooper Baskerville that he was Lamar Moore and gave a Social Security number that matched that name as well as appellant's description with the exception of approximately two inches in height. The car was a third party rental. Appellant told Trooper Baskerville he was coming from Cleveland and was on his way to Mercy Medical Center because his girlfriend was giving birth. When Trooper Baskerville told appellant that he was issuing a speeding ticket, appellant became angry and told Trooper Baskerville that he had given him the correct information.
 {¶ 8} Trooper Baskerville left appellant seated in his cruiser while he returned to the car to question Taylor. Taylor said he and appellant were coming from Akron. After this conversation, based on his observation of Taylor's activity, the fact that the car was a third party rental, appellant's statement that he had provided the correct information, the overall nervousness of both men, and his perception that they were being deceptive, *Page 4 
Trooper Baskerville requested that dispatch send a narcotics-detection dog to the scene.
 {¶ 9} Officer Eric Haynam, a Jackson Township officer and canine handler, arrived with canine officer "Lou" just before 4 a.m. Trooper Baskerville explained to Officer Haynam that the car was a rental not registered to either appellant or Taylor, that the stories of the two men did not match, and that he suspected there were illegal substances in the car. Officer Haynam directed Trooper Baskerville to remove Taylor from the car. He then began walking Lou around the parameter of the car. Lou alerted at the driver side door by scratching at the door. Officer Haynam went to the passenger side door away from traffic, opened the door, and released Lou inside. Lou went immediately to the center console of the car and aggressively alerted by scratching on the console. Officer Haynam advised Trooper Baskerville of Lou's indication, and returned Lou to his cruiser.
 {¶ 10} Officer Haynam then stood with Taylor while Trooper Baskerville searched the car. In the center console, Trooper Baskerville found a 9-millimeter handgun and a plastic bag containing several other plastic bags, each containing crack cocaine. Another handgun, a .380 automatic, was located under the driver's seat. Upon finding the first weapon, Trooper Baskerville advised Officer Haynam to pat down Taylor for his safety. Taylor told Officer Haynam he had marijuana in his waistband.
 {¶ 11} While Trooper Baskerville was searching the car, the cruiser video recorded appellant talking on his cell phone in the rear of the cruiser. He told an unidentified female that the officers had found the drugs and the gun. He then told her to report the car stolen. *Page 5 
 {¶ 12} Trooper Scott Louive arrived to assist Trooper Baskerville and transported Taylor to the Stark County jail. At the jail, Taylor told Trooper Louvie that he knew there was a gun and crack cocaine in the car. He then asked if it would help him to reduce his charges if he admitted the gun was his and that he knew about the crack. Trooper Louive told Taylor he could not answer that question.
 {¶ 13} After the evidentiary hearing, the motion to suppress was overruled. The trial court found that Trooper Baskerville had probable cause to stop appellant on a traffic violation, that he then observed activity upon making the stop, the totality of which gave Trooper Baskerville probable cause to search the car and appellant. Further, the court found that the statements made by appellant and Taylor were unsolicited and thus admissible.
 {¶ 14} Taylor pled guilty as charged. Appellant's case proceeded to jury trial. At trial, the State presented five witnesses. Appellant did not present any evidence.
 {¶ 15} Appellant was found guilty as charged. He was sentenced to ten years on each drug offense, to be served concurrently, and five years for having weapons under disability, to be served consecutive to the drug charges. Additionally, the court imposed the balance of appellant's post-release control time, two years and 144 days, to be served consecutive to the drug and weapons sentences.
 {¶ 16} Appellant now files this appeal to challenge the trial court's denial of his motion to suppress raising as his sole assignment of error[1]:
 {¶ 17} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE THAT WAS OBTAINED AS A RESULT OF THE SEARCH CONDUCTED ON THE VEHICLE THAT WAS UNLAWFULLY *Page 6 
DETAINED AFTER THE DRIVER'S BACKGROUND INFORMATION CLEARED AND THE CITATION HAD BEEN COMPLETED."
 I. {¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996),517 U.S. 690, 116 S.Ct. 1657," . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Page 7 
 {¶ 19} The parties agree that appellant was lawfully stopped. The question in the case at bar is whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to call for the use of a narcotics-detection dog to sniff around exterior of motorist's vehicle.
 {¶ 20} The use of a narcotics-detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See Illinois v. Caballes (2005), 543 U.S. 405,409, 125 S.Ct. 834, 838; United States v. Place (1983), 462 U.S. 696,707, 103 S.Ct. 2637, 2645; State v. Carlson (1995), 102 Ohio App.3d 585,594, 657 N.E.2d 591; United States v. Seals (C.A.5 1993), 987 F.2d 1102,1106. Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. United States v. Reed (6th Cir.1998),141 F.3d 644 (quoting United States v. Berry (6th Cir.), 90 F.3d 148,153, cert. denied 519 U.S. 999 (1996); accord, United States v.Hill (6th Cir.1999), 195 F.3d 258, 273 United States v. Diaz (6th Cir.1994), 25 F.3d 392, 394; State v. French (1995),104 Ohio App.3d 740, 663 N.E.2d 367, abrogated on different grounds, City of Dayton v.Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.
 {¶ 21} "`[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.'" State v. Batchili, 113 Ohio St.3d 403,2007-Ohio-2204, at ¶ 12, quoting State v. Keathley (1988),55 Ohio App.3d 130, 131. "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." Id., citing State v. Bolden, 12th Dist. No. CA2003-03-007,2004-Ohio-184, ¶ 17, citing Profuse at 659. "Further, `[i]n *Page 8 
determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" Id., quoting State v.Carlson (1995), 102 Ohio App.3d 585, 598-599, citing State v. Cook
(1992), 65 Ohio St.3d 516, 521-522, and U.S. v. Sharpe (1985),470 U.S. 675.
 {¶ 22} However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." Id. at ¶ 34, citing State v.Retherford (1994), 93 Ohio App.3d 586, 600, citing U.S. v.Brignoni-Ponce (1975), 422 U.S. 873, 881-882. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." State v. Matteucci, 11th Dist. No. 2001-L-205, 2003-Ohio-702, ¶ 30, citing State v. Bobo (1988), 37 Ohio St.3d 177,178.
 {¶ 23} In the case at bar, the record is not clear as to whether or not Trooper Baskerville had finished writing the citation before the narcotics-detection dog arrived. However, it is critical to note that Trooper Baskerville had a reasonable suspicion of criminal activity prior to issuing the citation.
 {¶ 24} Upon his initial approach to the vehicle, Trooper Baskerville observed the co-defendant "busting the guts" out of a cigar. [ST. at 8-9; 28-29; 51-52]. Based upon his training and experience in drug interdiction Trooper Baskerville was aware that drug users commonly would remove the tobacco from a cigar and replace it with marijuana. [Id.]. Appellant was driving a car that was a third party rental; again, a characteristic that Trooper Baskerville has noted is associated with drug users. [ST. at 12; 49-51]. *Page 9 
Appellant could not produce his driver's license, proof of insurance and vehicle registration when asked by Trooper Baskerville. [T. at 10]. When appellant learned he would be receiving a speeding ticket, he became angry and claimed that he had given Trooper Baskerville the correct information. [ST. at 11; 24]. Both men were behaving nervously and gave conflicting information concerning from where they were coming. [ST. at 12-13].
 {¶ 25} Trooper Baskerville testified that he pulled appellant over at 3:49 a.m. He stated that the typical time involved issuing a traffic citation, assuming the driver has his operator's license, registration, and proof of insurance is fifteen minutes. If, like appellant, the driver does not have this information, Trooper Baskerville testified it could take another ten to fifteen minutes to obtain this information through dispatch and issue the citation. Officer Haynam testified that he arrived at the scene just before 4 a.m. Thus, it would appear that the narcotics-detection dog arrived ten minutes after appellant was stopped, less time than it would take to complete a typical traffic citation.
 {¶ 26} Appellant was not being detained solely because of the speeding violation, but because the officer had a reasonable suspicion that the vehicle contained drugs. Trooper Baskerville had a reasonable suspicion of illegal drug activity. He could lawfully call for a narcotics-detection dog and wait for it to arrive to check for drugs based on this suspicion. Batchili, supra at ¶ 15-17. Once the drug dog alerted to appellant's vehicle, Trooper Baskerville had probable cause to search that vehicle for contraband. No violation of appellant's Fourth Amendment rights has been demonstrated. Therefore, we find the trial court correctly denied appellant's motion to suppress evidence.
 {¶ 27} Appellant's sole assignment of error is overruled. *Page 10 
 {¶ 28} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.
 Gwin, P.J., Wise, J., and Edwards, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed. Costs to appellant.
[1] Appellant has not raised any issue relating to the trial, the jury's verdict or sentencing. *Page 1