[Cite as *State v. Fox*, 2013-Ohio-4786.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                       |
|-------------------------|---|-------------------------------|
| STATE OF OHIO           | : | Hon. W. Scott Gwin, P.J.      |
|                         | : | Hon. John W. Wise, J.         |
| Plaintiff-Appellant     | : | Hon. Craig R. Baldwin, J.     |
|                         | : |                               |
| -vs-                    | : |                               |
|                         | : | Case No. 13CA41               |
| MICHAEL A. FOX          | : |                               |
|                         | : |                               |
| Defendant-Appellee      | : | O P I N I O N                 |


CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No. 2012-
                             CR-877H

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      October 30, 2013


APPEARANCES:fo

For Plaintiff-Appellant          For Defendant-Appellee

JOHN J. MAYER, JR.               GEORGE KEYSER
Prosecuting Attorney             44 Park Avenue West, Ste. 202
By: JOHN NIEFT                   Mansfield, OH 44902
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH  44902

*Gwin, P.J.*

{¶1} Appellant the State of Ohio appeals the May 13, 2013 Judgment Entry of the Richland County Court of Common Pleas granting appellee Michael A. Fox's motion to suppress evidence.

### Factual and Procedural Background

{¶2} On November 16, 2012 at approximately 5:30 p.m., Officer David Johnson of the Mansfield Police Department observed a vehicle parked in the front parking lot of the Family Video on Park Avenue West, Mansfield, Ohio. The business was open as well as several other businesses in downtown Mansfield. Officer Johnson circled the block and observed that the vehicle containing two occupants had not moved. Officer Johnson recognized the driver by appearance but not by name. He recognized her as a person who was known to the police as having used heroin. He noticed the passenger sort of bent over. Officer Johnson made contact with the female seated in the driver's seat and Fox who was seated in the passenger seat. Officer Johnson gathered their information. The female did not have a driver's license on her. Officer Johnson returned to his cruiser to run a check of them. Officer Johnson called in the information and his whereabouts. A backup unit was sent as protocol because there were two suspects.

{¶3} Officer Johnson ran a check of the driver's license of the female driver of the vehicle. The LEADS computer indicated that she did not have a valid driver's license Officer Johnson issued a citation to the driver for not having a valid operator's license.

{¶4} Officer Sarah Mosier-Napier arrived within two minutes as backup. She had a canine partner with her. It was decided that she would do a free air sniff of the vehicle. Fox and the female were removed from the vehicle and patted down for

weapons. Officer Johnson put Fox in one of the cruiser's. The driver was not placed in a cruiser.

{¶5} As the canine unit began walking around the vehicle, Officer Johnson observed Fox bent over in the back of his cruiser. Officer Johnson believed either Fox was hiding something in the back of his cruiser or readying a weapon. Officer Johnson opened the cruiser door and observed that Fox had his shoe half-off. Officer Johnson requested Fox remove his shoe entirely to see what was inside. Inside was a syringe with what appeared to be heroin. Fox admitted that it was heroin.

{¶6} Officer Mosier-Napier's canine partner alerted on the passenger side of the vehicle where Fox had been sitting. The front passenger compartment of the vehicle was searched. A soda can with the bottom cut off was found. There were scorch marks and a cotton ball inside the can.

{¶7} Fox was subsequently indicted by the Richland County Grand Jury for Possession of Heroin in violation of R.C. 2925.11(A) and (C)(6)(a), a felony of the fifth degree.

{¶8} Fox's motion to suppress was heard on February 21, 2013. The trial court sustained the motion to suppress on May 13, 2013. In that same judgment entry, the trial court also dismissed the indictment sua sponte.

### Assignment of Error

{¶9} The State raises one assignment of error,

{¶10} "I. THE TRIAL COURT ERRED WHEN IT SUSTAINED THE APPELLEE'S MOTION TO SUPPRESS EVIDENCE."

I.

{¶11} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. Ross 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. Washington 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See B*urnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist Athens 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶12} In its sole assignment of error, the state maintains that the trial court erred in granting Fox's motion to suppress. The state argues that Officer Johnson conducted a *Terry* stop upon observing the vehicle because Officer Johnson knew the area to be a

high crime area, recognized the occupants as known drug users and observed Fox bend down in his seat.

{¶13} Contact between police officers and the public can be characterized in three different ways. *State v. Richardson,* 5th Dist. Stark No. 2004CA00205, 2005-Ohio-554, ¶23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147(6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also *INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* supra*,* at 434-435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U .S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.

{¶14} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson, supra; Flowers,* 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry*

doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida,* 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry,*

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612(1972).

{¶15} The Fourth Amendment requires that officers have had a "reasonable fear for his own or others' safety" before frisking. *Terry* 392 U.S. at 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1(1989) (*quoting Terry,* 392 U.S. at 27, 88 S.Ct.

1868, 20 L.Ed.2d 889). Whether that standard is met must be determined "'from the standpoint of an objectively reasonable police officer," ' without reference to "the actual motivations of the individual officers involved." *United States v. Hill*, 131 F.3d 1056, 1059(D.C. Cir. 1997) (*quoting Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996)).

{¶16} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson,* supra*; Flowers,* 909 F. 2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See*, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623(1975).

{¶17} In *Florida v. Bostick* (1991), 501 U.S. 429, 111 S .Ct. 2382, 115 L.Ed.2d 389, the United States Supreme Court reiterated,

A consensual encounter does not trigger Fourth Amendment scrutiny. See *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L. Ed. 2d 889. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, *Florida v. Rodriguez,* 469 U.S. 1, 5-6, 105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247, and request consent to search luggage, *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required."

501 U.S. at 434-35, 111 S.Ct. at 2386. The courts in Ohio have taken a similar approach,

"[b]ecause the vehicle was parked, appellant was not subjected to a seizure *per se* as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts ... have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making the Fourth Amendment inapplicable. See, e.g*., State v. Welz* (Dec. 9, 1994), Lake App. No. 93-L-137, unreported; *Cuyahoga Falls v. Sandstrom* (June 21, 1995), Summit App. No. 17000, unreported; *State v. Kiggans* (Nov. 20, 1995), Stark App. No.1995CA00157, unreported; *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported."

*State v. Lott*, 11th Dist. Ashtabula No. 96-A-0011, 1997 WL 799426(Dec. 26, 1997).

**{¶18}** The vehicle in which Fox was seated was parked in the parking lot of a business that was open to the public. It was 5:30 p.m., a time when citizens could be

expected to patronage the video store. Officer Johnson noticed no other unusual activity. He recognized the female seated in the driver seat as a known heroin user. Officer Johnson left both individuals in the car as he returned to his cruiser to issue the citation.

**{¶19}** A person's reputation or past record does not, standing alone, provide an officer with a reasonable suspicion to support a *Terry*-type investigative stop or search. *United States v. Sandoval*, 29 F.3d 537, 542(10th Cir. 1994); *State v. Whitman,* 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 293 (5th Dist. Holmes County 2009). A person's presence in a high crime area, standing alone, is not enough to support reasonable, particularized suspicion that person is committing a crime, but officers are not required to ignore relevant characteristics of location in determining whether circumstances are sufficiently suspicious to warrant further investigation. *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

**{¶20}** In the case at bar, the state did not present any evidence that Fox or the unidentified female had been in a drug house or anywhere where drug or other criminal activity was taking place. Additionally, the Officer did not see anything in plain sight that would lead him to believe that criminal activity was afoot.

**{¶21}** "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.'" *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶12, quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932(2nd Dist. Miami 1988). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." Id., *citing State v. Bolden,* 12th Dist. Preble No. CA2003–03–007,

2004-Ohio-184, ¶17, *citing Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979). Further, "'[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id., quoting State v. Carlson*, 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591(9th Dist. Medina 1995), *citing State v. Cook*, 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70(1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605(1985). *See also State v. Whitman*, 184 Ohio App.3d 740, 2009-Ohio-5647, 922 N.E.2d 293(5th Dist. Holmes); *State v. Woodson,* 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, ¶ 21.

**{¶22}** However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Whitman, ¶12; Woodson, ¶22, citing State v. Retherford*, 93 Ohio App.3d 586, 600, 639 N.E.2d 498(2nd Dist. Montgomery 1994), *citing United States v. Brignoni–Ponce*, 422 U.S. 873, 881–882, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975). "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. Lake No. 2001–L–205, 2003-Ohio-702, ¶ 30, *citing State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988). *See also Woodson,* 2008-Ohio-670, ¶ 22.

**{¶23}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992). Our role is to determine whether there is relevant, competent and credible evidence, upon

which the fact finder could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846(1988).

{¶24} In *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273(1984), the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *See also State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), syllabus 1.

{¶25} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officer. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of the appellee. Such a choice is not clearly erroneous.

{¶26} We find the trial judge's findings to be supported by competent, credible evidence. The mere fact that the vehicle was parked at the edge of the parking lot during business hours and that Fox bent down or was slumped down in his seat were not a sufficient basis for detaining the occupants of the car.

**{¶27}** Therefore, we cannot say that the officer had reasonable suspicion to detain Fox after issuing the citation to the driver because no specific or articulable facts existed to support the officer's contention that criminal activity was afoot. The trial court correctly granted the motion to suppress.

**{¶28}** Appellant's sole assignment of error is overruled and the judgment of the Court of Common Pleas, Richland County, Ohio is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. CRAIG R. BALDWIN

WSG:clw 1015

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MICHAEL A. FOX | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 13CA41 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Richland County, Ohio is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. CRAIG R. BALDWIN