[Cite as *State v. Williams*, 2019-Ohio-1104.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff – Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 18CA51 |
| CHRISTOPHER WILLIAMS | |
| Defendant – Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
                             Common Pleas, Case No. 2017-CR-0644


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      March 26, 2019


APPEARANCES:


For Plaintiff-Appellee               For Defendant-Appellant

GARY BISHOP                          JON J. SAIA
Prosecuting Attorney                 JESSICA G. D'VARGA
                                     713 South Front Street
JOSEPH C. SNYDER                     Columbus, Ohio  43206
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

*Hoffman, P.J.*

**{¶1}** Appellant Christopher Williams appeals the judgment entered by the Richland County Common Pleas Court convicting him of having a weapon under disability (R.C. 2923.13(A)(3)) with four weapons forfeiture specifications, and two counts of identity fraud (R.C. 2913.49(B)(1), (2)), and sentencing him to three years community control. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On July 3, 2017, Trooper Shane Morrow of the Ohio State Highway Patrol was sitting in a crossover along Interstate 71. As Appellant drove past, Tpr. Morrow noticed his window tint appeared impermissibly dark. Tpr. Morrow followed Appellant off the interstate, and eventually pulled him over.

**{¶3}** Tpr. Morrow checked the license plate and found the vehicle registered to James Stafford, who had a CCW permit. When the trooper approached the vehicle, he learned Stafford was the passenger in the vehicle. Appellant provided a driver's license with the name Scott Williams. Tpr. Morrow noted Appellant was "overly nervous." Supp. Tr. 24. Appellant's hands were shaking, his breathing was heavy, and the trooper could see his heart beating in his chest. In contrast, Stafford was relaxed and calm.

**{¶4}** Tpr. Morrow tested the window and found the tint to be 37%, below the legal limit of 50%. He removed Appellant from the vehicle and placed him in the back of his cruiser. When asked about the nervousness, Appellant told him it was due to caffeine and energy drinks. Appellant also told the trooper there were a lot of guns in the car because they were going target shooting when stopped.

**{¶5}** The trooper read Appellant his Miranda rights, and requested a records and driving status check of Appellant and Stafford. Prior to receiving the results of the records

check, Trooper Morrow advised Stafford he would be receiving a warning for the window tint violation. Upon talking with Stafford, Stafford admitted both he and Appellant use marijuana. Stafford consented to a search of the car.

**{¶6}** Almost immediately after Stafford consented to the search of the car, the records check on both occupants of the vehicle came back clean. The trooper went back to his cruiser to get his gloves for the search of the car, and also to get a leash for the pit bull riding in Stafford's car in order to remove the dog from the vehicle for the search. He spoke with Appellant when he returned to his cruiser, notifying Appellant he was going to search the car.

**{¶7}** Trooper Morrow then asked Appellant to consent to a search of his person. Appellant initially said if the trooper didn't have a reason to, he'd rather not be searched. Tr. 30. The trooper asked what he had to hide. Appellant paused and then said the trooper could search him. The trooper asked if he was sure, and Appellant responded affirmatively.

**{¶8}** Upon searching Appellant, Tpr. Morrow found an Ohio ID card with the name Christopher Williams. Appellant admitted the driver's license he produced earlier was his brother's license. Upon running a LEADS check of Appellant's ID card, the trooper learned Appellant had a license forfeiture suspension and a warrant out of Medina County on a charge of drug paraphernalia. The trooper also discovered Appellant was court-martialed for drugs while serving in the military. During the search of the trunk, Stafford identified which guns were his, and which guns belonged to Appellant.

**{¶9}** Appellant was indicted by the Richland County Grand Jury with two counts of having a weapon under a disability and two counts of identity fraud, with five gun

forfeiture specifications. His motion to suppress was overruled. The case proceeded to bench trial in the Richland County Common Pleas Court. Prior to trial, the State dismissed one count of weapons under disability. The court found Appellant guilty on the remaining counts, and guilty of four of the five forfeiture specifications. He was sentenced to three years community control.

{¶10} It is from the May 23, 2018 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ERRED IN OVERRULING MR. WILLIAMS MOTION TO SUPPRESS EVIDENCE.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING MR. WILLIAMS GUILTY OF HAVING WEAPONS UNDER DISABILITY.

I.

{¶11} Appellant argues the court erred in overruling his motion to suppress. He argues there was no reasonable suspicion to justify a prolonged detention after the initial traffic stop, and the court further erred in finding the search of his person was consensual.

{¶12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an

appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger,* supra*.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶13}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶14}** Appellant argues the stop should have terminated when the warning was given for the window tint violation, or in the alternative when the criminal records check of both driver's licenses presented to Tpr. Morrow came back clear.

**{¶15}** "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.'" *State v. Batchili*, 113

Ohio St.3d 403, 865 N.E.2d 1282, 2007-Ohio-2204, at ¶ 12, *quoting State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (1988). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id.*, *citing State v. Bolden*, 12th Dist. No. CA2003–03–007, 2004-Ohio-184, ¶ 17, *citing Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Further, "'[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" *Id.*

{¶16} However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *State v. Woodson,* 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, ¶ 22.

{¶17} At the time Trooper Morrow received consent from Stafford to search the vehicle, he had not yet fully addressed the infraction which was the purpose of the stop. While he had given a warning for the tint violation, he had not yet received the results of the computer check on the driver and the owner of the vehicle. Approximately 12-13 minutes passed while the officer waited for the results of the records check. The trial court found this was not an unreasonable delay, given the extreme nervousness of the driver and the presence of a weapon on Stafford. We agree, particularly given the representation there were multiple weapons in the trunk of the vehicle, and Stafford admitted both he and Appellant use marijuana.

**{¶18}** Where an officer observes a violation of law, lawfully stops the individual in connection with that violation, and, prior to completing the purpose of the stop, asks permission to conduct a search, the request occurs during a lawful detention. *State v. Scarberry*, 10th Dist. Franklin No. 15AP-775, 2016-Ohio-7065, 72 N.E.3d 173, ¶ 39. In the instant case, the officer had not completed the purpose of the stop when Stafford gave consent to search the vehicle. Stafford's consent to search "stopped the clock" regarding the lawfulness of the continued detention. *State v. Johnson,* 2nd Dist. Montgomery No. 27574, 2017-Ohio-8909, ¶22.

**{¶19}** Appellant further argues his consent to search his person was not voluntary. When a person is lawfully detained by police and consents to a search, the state must show by clear and convincing evidence the consent was freely and voluntarily given. *Scarberry, supra,* at ¶19. Important factors in determining the voluntariness of consent are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *State v. Myer*, 5th Dist. No. 16-CA-00007, 2017-Ohio-1046, 87 N.E.3d 671, ¶ 13.

**{¶20}** Appellant testified he did not voluntarily consent. He contended he was coerced into consenting because he had been in a confined space in the rear of the cruiser for fourteen minutes, with the Trooper's canine partner present in the compartment next to Appellant. He testified, "I just felt like I was being pestered. He was continually

asking the same question over and over again until he got the answer that he wanted." Supp. Tr. 94.

**{¶21}** However, on cross-examination, Appellant admitted the trooper did not brandish his weapon, tell him he was required to consent, or touch Appellant. He further testified, when asked how long it took between the first time Trooper Morrow asked for consent until he provided consent, "I would say it was probably about 3 seconds, but it felt like forever." Supp. Tr. 99.

**{¶22}** We note from the backseat video of the stop, Appellant gave consent approximately 20 seconds after he was first asked for consent by Trooper Morrow. Further, although the dog can be heard barking occasionally, the dog was confined in a compartment in which he was not visible to Appellant, and therefore not a threatening presence. The trial court found:

> The court is not persuaded that Mr. Williams' consent was involuntarily [sic]. Mr. Williams had been fully advised of his right to insist on an attorney and of his other Miranda rights. The audio-video recording shows that Tpr. Morrow is not belligerent or intimidating. While the trooper has apparently been trained to encourage consent in these circumstances, Mr. Williams appears to be an articulate and intelligent person making decisions based on a balancing of his own best interests.

**{¶23}** Judgment, March 27, 2018.

**{¶24}** We find the trial court did not err in finding Appellant's consent voluntary.

**{¶25}** The trial court did not err in overruling Appellant's motion to suppress. The first assignment of error is overruled.

II.

**{¶26}** In his second assignment of error, Appellant argues the court erred as a matter of law in finding him guilty of having a weapon under disability, as the State failed to present sufficient evidence he was under a disability by reason of a prior felony.

**{¶27}** Appellant was convicted of having a weapon under disability in violation of R.C. 2923.13(A)(3):

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶28}** The State presented evidence while in the Air Force, Appellant was court-martialed for conspiracy to commit the wrongful use of heroin, in violation of Article 112.A of the Code of Military Justice. The maximum penalty was five years confinement.

Appellant received 45 days confinement and a bad conduct discharge. The Code of Military Justice does not classify offenses as felonies or misdemeanors.

**{¶29}** In finding Appellant guilty, the court found as follows:

The defendant argued that he was not convicted of a felony drug offense because there was no proof that the defendant's military conviction was a felony drug offense. His sentence was less than a year and the punishment under the military code is "confinement" not "imprisonment." R.C. 2901.02(E) defines what is a felony under Ohio law. It says "any offense not specifically classified is a felony if imprisonment for more than one year may be imposed as a penalty." It is the potential penalty, not the actual penalty imposed which determines classification as a felony. The potential penalty for Mr. Williams' offense according to military law is 5 years confinement. There is no significant difference in deprivation of liberty between imprisonment and confinement. His military conviction is a felony drug offense.

**{¶30}** Decision after Bench Trial, April 2, 2018.

**{¶31}** We find the State's reliance on the definition of a felony found in R.C. 2901.02(E) is misplaced in the instant case. R.C. 2901.02 begins with the words, "As used in the Revised Code." From the legislative notes, it appears the purpose of the statute is not to define out-of-state convictions, but to classify Ohio offenses:

This section classifies offenses into two degrees of murder, four degrees each of felony and misdemeanor, minor misdemeanors, and offenses not specifically classified. The purpose of the classification is to permit a high level of flexibility in characterizing offenses and assessing penalties for their violation according to their comparative seriousness.

Also, the section is intended to preserve a distinction between felonies and misdemeanors, and in some measure to integrate into the new code existing offenses which will retain the former penalty scheme.

**{¶32}** We find R.C. 2901.02(E) does not resolve whether Appellant's military offense was a felony. The offense is not unclassified under Ohio law, but rather is unclassified under military law. Construing the statute strictly against the State[1], R.C. 2901.02(E) applies to the classification of offenses within the Ohio Revised Code, and not to the classification of offenses from outside of Ohio.

**{¶33}** R.C. 2901.04(C) provides guidance as to the determination of when a conviction from outside Ohio constitutes a disability within the meaning of R.C. 2913.13:

(C) Any provision of a section of the Revised Code that refers to a previous conviction of or plea of guilty to a violation of a section of the Revised Code or of a division of a section of the Revised Code shall be construed to also refer to a previous conviction of or plea of guilty to a *substantially equivalent* offense under an existing or former law of this state,

---

[1] *See* R.C. 2901.04(A).

another state, or the United States or under an existing or former municipal ordinance (emphasis added).

{¶34} Further, R.C. 2923.13(A)(3) refers to a prior felony conviction involving a drug of abuse. R.C. 2925.01 defines "drug abuse offense" as follows:

(G) "Drug abuse offense" means any of the following:

(1) A violation of division (A) of section 2913.02 that constitutes theft of drugs, or a violation of section 2925.02, 2925.03, 2925.04, 2925.041, 2925.05, 2925.06, 2925.11, 2925.12, 2925.13, 2925.22, 2925.23, 2925.24, 2925.31, 2925.32, 2925.36, or 2925.37 of the Revised Code;

(2) A violation of an existing or former law of this or any other state or of the United States that is *substantially equivalent* to any section listed in division (G)(1) of this section (emphasis added).

{¶35} Appellant was court-martialed under the Code of Military Justice, which is enacted by Congress and included in the United States Code. We therefore find Appellant's military conviction was a violation of a law of the United States, and R.C. 2901.04(C) and R.C. 2925.01(G) therefore apply.

{¶36} The Ohio Supreme Court considered similar "substantially equivalent" language in the sex offender registration statutes, holding as follows:

[I]n order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the record in a narrow class of cases where the factfinder was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.

**{¶37}** *State v. Lloyd*, 132 Ohio St.3d 135, 970 N.E.2d 870, 2012–Ohio–2015, ¶ 31.

**{¶38}** The State bears the burden of proving an out-of-state offense is the substantial equivalent of the Ohio offense upon which it seeks to rely. *Id.* at ¶ 46, 970 N.E.2d 870.

**{¶39}** In *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, the Ninth District Court of Appeals applied the reasoning of *Lloyd, supra,* to determine whether a defendant's Florida conviction constituted a prior felony of violence within the meaning of R.C. 2923.13(A)(2), preventing him from possessing a weapon. The State argued the

offense was substantially equivalent to abduction in Ohio, which would be a felony of violence. The defendant argued the offense would be substantially equivalent to unlawful restraint in Ohio, which is not an offense of violence. The Court of Appeals found a comparison of the statutory elements was insufficient to determine whether the appellant's prior conviction was substantially equivalent to abduction or unlawful restraint. Because the trial court ruled on the issue prior to trial, the State presented only the record of conviction, and the record was insufficient to determine whether the Florida offense was an offense of violence. The court therefore remanded the matter for a hearing to receive evidence and arguments on the nature of the appellant's Florida conviction. *Id.* at ¶11.

**{¶40}** The burden of proof in the instant case was on the State to prove Appellant had a prior "felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." From the statutes and case law cited above, we find the proper inquiry is whether the State proved Appellant's prior conviction was substantially equivalent to an Ohio felony drug offense.

**{¶41}** The State stated in closing argument Ohio does not have a "wrongful use" statute. However, the State presented evidence Appellant was convicted of violation of Article 112a of the Uniform Code of Military Justice, which provides:

> (a) Any person subject to this chapter who wrongfully uses, possesses, manufactures, distributes, imports into the customs territory of the United States, exports from the United States, or introduces into an installation, vessel, vehicle, or aircraft used by or under the control of the

armed forces a substance described in subsection (b) shall be punished as a court-martial may direct.

(b) The substances referred to in subsection (a) are the following:

(1) opium, heroin, cocaine, amphetamine, lysergic acid diethylamide, methamphetamine, phencyclidine, barbituric acid, and marijuana, and any compound or derivative of any such substance.

{¶42} Specifically, Appellant was convicted of wrongful use of heroin. Article 112a provides the elements of wrongful use of a controlled substance are, "(a) That the accused used a controlled substance, and (b) That the use by the accused was wrongful." The Article further provides in subsection (7)(1)(a) for a maximum punishment of dishonorable discharge, forfeiture of all pay and allowances, and confinement of five years. See State's Exhibits 3 and 14.

{¶43} Although Ohio does not have a "wrongful use" statute, R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or *use* a controlled substance or a controlled substance analog." (Emphasis added). Pursuant to R.C. 2925.11(C), when a violation of this statute is by virtue of heroin, violation thereof is always a felony. Therefore, we find the offense of which Appellant was convicted is substantially equivalent to a felony violation of R.C. 2925.11. Further, R.C. 2925.11 is specifically included in the language defining "drug abuse offense" as set forth in R.C. 2925.01(G). Therefore, the State presented sufficient evidence Appellant was under disability from possessing a weapon by virtue of his military conviction, which was substantially equivalent to a felony drug offense under Ohio law.

**{¶44}** Appellant also argues he was not informed that by pleading guilty to wrongful use of heroin, he would be under disability from owning a weapon. "A conviction for violation of the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that the offender is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347 (2010), syllabus 1. The State was not required to prove Appellant was informed he was under disability by virtue of his past conviction, as there is no culpable mental state for the element of his past conviction.

**{¶45}** The second assignment of error is overruled.

**{¶46}** The judgment of the Richland County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur