The STATE of Ohio, Appellant,

v.

WHITMAN, Appellee.

[Cite as *State v. Whitman,* 184 Ohio App.3d 733, 2009-Ohio-5647.]

Court of Appeals of Ohio,
Fifth District, Holmes County.

No. 09–CA–03.

Decided Oct. 22, 2009.

Steven Knowling, Holmes County Prosecuting Attorney, and Christine C. Williams, Assistant Prosecuting Attorney, for appellant.

Blair A. Bower and Scott E. Whitman, for appellee.

GWIN, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the March 19, 2009 judgment entry of the Holmes County Municipal Court granting defendant-appellee Scott E. Whitman's motion to suppress evidence.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On December 20, 2008, at 1:11 a.m., Deputy Tim Stryker observed appellee's car drift left of center twice. Deputy Stryker initiated a traffic stop. He then approached appellee's vehicle and informed him of the reason for the stop, at which time appellee informed him that the reason he had crossed over the line was that he was "looking at the radio." As Deputy Stryker was talking to appellee, he detected an odor of alcohol coming from inside the car. Appellee was asked to exit the vehicle. Because appellee is underage, Deputy Stryker did not ask him to perform any field sobriety tests; rather, appellee was given a portable breath test. Appellee was permitted to return to his vehicle when the portable breath test and the passenger's admission to having consumed alcohol dispelled the officer's suspicion. The deputy asked appellee whether he had any drugs in the vehicle. After appellee responded that he did not, Deputy Stryker advised appellee that he was going to conduct a walk-around of appellee's car with the deputy's drug-detecting canine partner. The dog alerted to the passenger side of the vehicle. While conducting a search of the vehicle's interior in response to the dog's alert, Deputy Stryker found an empty pack of cigarettes that contained marijuana "roaches" on the driver's side of the vehicle. Appellee told the officer, "I forgot those were in there."

{¶ 3} Appellee was charged with possession of marijuana, a minor misdemeanor, in violation of R.C. 2925.11. He filed a motion to suppress on February 4, 2009.

{¶ 4} The trial court conducted an evidentiary hearing on appellee's motion on February 24, 2009. On March 19, 2009, the court granted appellee's motion to suppress. On March 25, 2009, the state filed its certification pursuant to Crim.R. 12(J).

{¶ 5} The state timely appeals, asserting a single assignment of error:

{¶ 6} "I. Deputy Stryker did not lack authority to conduct a search of appellee's vehicle."

{¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether those findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. United States,* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 8} The parties agree that appellant was lawfully stopped. The question is whether the lawful detention for the traffic infractions became an unlawful detention when the officer decided to use his narcotics-detection dog to sniff around the exterior of the appellee's vehicle. See *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at ¶ 8; *State v. Woodson,* Stark App. No. 2007–CA–00151, 2008-Ohio-670, 2008 WL 442569, at ¶ 19.

{¶ 9} The use of a drug-detection dog does not constitute a "search," and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See *Illinois v. Caballes* (2005), 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842; *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110; *State v. Carlson* (1995), 102 Ohio App.3d 585, 594, 657 N.E.2d 591; *United States v. Seals* (C.A.5, 1993), 987 F.2d 1102, 1106. The officer needs no suspicion or cause to "run the dog around" the stopped vehicle if he does it contemporaneous-

ly with the legitimate activities associated with the traffic violation. See *Caballes,* 543 U.S. at 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (upholding constitutionality of dog sniff conducted by an officer—"[w]hile [a second officer] was in the process of writing a warning ticket, [the second officer] walked his dog around [Caballes's] car"—and stating that the use of the dog during Caballes's traffic stop "[did] not implicate legitimate privacy interests" because "the dog sniff was performed on the exterior of [Caballes's] car *while* he was lawfully seized for a traffic violation"). (Emphasis added.)

{¶ 10} Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *United States v. Reed* (C.A.6, 1998), 141 F.3d 644, quoting *United States v. Berry* (C.A.6, 1996), 90 F.3d 148, 153; accord *United States v. Hill* (C.A.6, 1999), 195 F.3d 258, 273; *United States v. Diaz* (C.A.6, 1994), 25 F.3d 392, 394; *State v. French* (1995), 104 Ohio App.3d 740, 663 N.E.2d 367.

{¶ 11} " '[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.' " *State v. Batchili,* 113 Ohio St.3d 403, 865 N.E.2d 1282, 2007-Ohio-2204, at ¶ 12, quoting *State v. Keathley* (1988), 55 Ohio App.3d 130, 131, 562 N.E.2d 932. "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." Id., citing *State v. Bolden,* 12th Dist. No. CA2003–03–007, 2004-Ohio-184, 2004 WL 77617, ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660. Further, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " Id., quoting *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591, citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70, and *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605. See also *Woodson,* 2008-Ohio-670, 2008 WL 442569, at ¶ 21.

{¶ 12} However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Woodson* at ¶ 22, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 600, 639 N.E.2d 498, citing *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 881–882, 95 S.Ct. 2574, 45 L.Ed.2d 607. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No. 2001–L–205, 2003-Ohio-702, ¶ 30, citing *State v. Bobo*

(1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489. See also *Woodson,* 2008-Ohio-670, 2008 WL 442569, at ¶ 22.

{¶ 13} Deputy Stryker initially removed appellee from the car because he smelled alcohol coming from the vehicle, and appellee was underage. Appellee was permitted to return to his vehicle when the portable breath test and the passenger's admission to having consumed alcohol dispelled the officer's suspicion. It was at this point that Deputy Stryker conducted the canine walk-around of appellee's vehicle.

{¶ 14} Deputy Stryker testified that he believed the fact that he had stopped the passenger, Mike Yoder, in the past and had found marihuana in his possession on those occasions justified the search of the appellee's vehicle.

{¶ 15} However, we note that "knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite reasonable suspicion" to justify a shift in investigatory intrusion from the traffic stop to a firearms or drugs investigation. *United States v. Sandoval* (C.A.10, 1994), 29 F.3d 537, 542. As the court explained in *Sandoval:*

{¶ 16} "If the law were otherwise, any person with any sort of criminal record—or even worse, a person with arrests but no convictions—could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time without the need for any other justification at all. Any such rule would clearly run counter to the requirement of a *reasonable* suspicion, and of the need that such stops be justified in light of a balancing of the competing interests at stake." Id. at 543. Accord *Joshua v. Dewitt* (C.A.6, 2003), 341 F.3d 430, 446. Accordingly, a person's reputation or past record does not, standing alone, provide an officer with a reasonable suspicion to support a *Terry*-type investigative stop or search. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 17} In the case at bar, the trial court found that "[t]he canine unit was called and the vehicle was searched." However, the evidence adduced at the hearing on appellee's motion to suppress established that Deputy Stryker had had his canine partner in the cruiser with him when he stopped appellee. Thus, the case at bar is an illustration of the conundrum faced by law enforcement officers seeking to do a canine walk-around of a vehicle pursuant to a legitimate roadside stop for a traffic violation. See *State v. Bickel,* Ashland App. No.2006–COA–034, 2007-Ohio-3517, 2007 WL 2009679, at ¶ 25.

{¶ 18} A canine walk-around of a vehicle that occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop and issue a citation does not violate the individual's constitutional rights. *Caballes,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842. Here, the detention was not illegally

prolonged in order to effectuate the walk-around. See *Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282. In the case at bar, had Deputy Stryker simply brought his canine partner out of the cruiser and walked him around appellee's vehicle upon his initial approach to appellee's vehicle, or while he was awaiting the computer check on the appellee's driver's license, registration, and vehicle plates, the Constitution would not be implicated. *Batchili; Caballes.* Here, it is not entirely clear whether the record check of appellee had been completed prior to the officer walking his canine partner around appellee's car.

{¶ 19} However, in the case at bar, there simply is no evidence to suggest that appellee's detention for the traffic violation was of sufficient length to make it constitutionally dubious. There was no delay caused by calling for a narcotics-detection dog and waiting for it to arrive; the canine was already at the scene. Deputy Stryker testified, "[I]t takes less than 30 seconds to go around the vehicle [with his canine partner]." Accordingly, the canine walk-around was not the product of an unreasonably long detention relating to the ultimate issuance of the citation.

{¶ 20} There is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation.

{¶ 21} Appellant's sole assignment of error is sustained. Therefore, the judgment of the Holmes County Municipal Court is reversed, and the matter is remanded for further proceedings in accordance with our opinion and the law.

Judgment reversed
and cause remanded.

FARMER, P.J., concurs.

EDWARDS, J., dissents.

EDWARDS, Judge, dissenting.

{¶ 22} I respectfully dissent from the majority's analysis and disposition of appellant's sole assignment of error.

{¶ 23} The majority, in ¶ 18, correctly notes that a canine walk-around of a vehicle that occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop and issue a citation does not violate the individual's constitutional rights. While the majority finds that the "canine-walk around" was not the product of an unreasonably long detention relating to the ultimate issuance of the citation, I disagree.

{¶ 24} After Deputy Stryker's suspicion that appellee was consuming alcohol was dispelled, Deputy Stryker could have issued a traffic citation to appellee. I would find, for such reason, that the canine walk-around in this case went beyond

the period necessary to effectuate the stop and issue a citation to appellee for his traffic offenses and that, therefore, appellee's constitutional rights were violated.

{¶ 25} On such basis, I would affirm the decision of the trial court.