[Cite as *State v. Isles*, 2020-Ohio-3061.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019 CA 00121 |
| CHOYCE ISLES | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                 Pleas, Case No.  2019 CR 00168(A)


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          May 21, 2020


APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

JOHN D. FERRERO                            AARON KOVALCHIK
PROSECUTING ATTORNEY                       116 Cleveland Avenue NW
KATHLEEN O. TATARSKY                       808 Courtyard Centre
ASSISTANT PROSECUTOR                       Canton, Ohio  44702
110 Central Plazsa South, Suite 510
Canton, Ohio  44702

*Wise, J.*

{¶1}    This matter is before the Court upon an appeal filed by Appellant Choyce Isles from the Stark County Court of Common Pleas concerning his conviction for one count of possession of cocaine and one count of illegal use or possession of drug paraphernalia. Mr. Isles challenges the trial court's denial of his Motion to Suppress.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

{¶2}    On January 15, 2019, Ohio Highway Patrol Trooper, Matthew Magistri, was on duty patrolling Interstate 77. (Supp.T. at 8) He ran the temporary license plate tag on a 2004 silver Taurus and the tag came back registered to a 2000 red four-door Honda. (*Id*. at 10) The tag had expired in 2017. (*Id*.) Trooper Magistri initiated a stop of the vehicle. (*Id*. at 11). He observed a female driver and Mr. Isles as a passenger. (*Id*. at 11-12)

{¶3}    Trooper Magistri testified, at the suppression hearing, Mr. Isles would not look at him and he appeared nervous when he told Trooper Magistri he did not have identification. (*Id*. at 12-13) The driver of the vehicle also did not have identification. (*Id*. at 14) The driver gave Trooper Magistri a false social security number and Mr. Isles gave a correct social security number. (*Id*. at 18) The driver eventually provided her correct social security number and Trooper Magistri learned there was a warrant for her arrest. (*Id*. at 19) Neither the driver nor Mr. Isles could identify the owner of the Taurus. (*Id*.) At that point, Trooper Magistri decided to tow the Taurus. (*Id*.)

{¶4}    Trooper Magistri ordered the driver to exit the vehicle. (*Id*. at 14) He patted her down, handcuffed her, read *Miranda* warnings, and secured her in the backseat of his cruiser. (*Id*.) Trooper Magistri next removed Mr. Isles from the vehicle. He patted down Mr. Isles, handcuffed him, read *Miranda* warnings, and also secured him in the back of

the cruiser. (*Id.* at 14-15) Trooper Magistri secured the driver and Mr. Isles in the back of his cruiser so he could further investigate. (*Id.* at 16) Trooper Magistri did not allow the driver and Mr. Isles to stand outside on the interstate due to the cold weather and his concern about them running into the lanes of traffic traveling on the interstate. (*Id.* at 52)

{¶5} Thereafter, Trooper Magistri requested a K-9 unit to perform a drug "plain air sniff." (*Id.* at 17) Approximately nine minutes after the initial stop, K-9 Diesel arrived with Canton Police Officer Trey Schilling. (*Id.* at 22) K-9 Diesel walked around the outside of the Taurus and alerted to drugs in multiple places on the vehicle. (*Id.* at 22-23) Based on these alerts, Trooper Magistri radioed dispatch for back up for a probable cause search. (*Id.* at 23-24) Trooper Magistri began the search of the Taurus and described what he found:

> So once the dog alerted and I walked up * * * there was white powder all over, like little white chunks and powder all over the driver's seat like where the person would actually be sitting on the seat, and then on the floorboard area, a little bit in the center console area, and then also on the passenger area. So there was the same white powdery substance and looks like rock substance was on both sides, the passenger and the driver's seat.

{¶6} (*Id.* at 24)

{¶7} After completing the search of the Taurus, Trooper Magistri decided to arrest both the driver and Mr. Isles for possession of cocaine. (*Id.* at 26) Trooper Magistri thought there may be more drugs and he separated the driver and Mr. Isles. (*Id.* at 25) Thereafter, the driver told Trooper Magistri Mr. Isles had a large amount of crack cocaine

in his sock and boot. (*Id.* at 26) The driver said she was the pusher and Mr. Isles was the drug dealer. (*Id.*) Trooper Magistri searched Mr. Isles and found drugs on his person. (*Id.*)

**{¶8}** The Stark County Grand Jury indicted Mr. Isles on one count of possession of cocaine, a violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree, and one count of illegal use or possession of drug paraphernalia, a violation of R.C. 2925.11(C)(1), a misdemeanor of the fourth degree. Mr. Isles entered a not guilty plea and subsequently counsel filed a Motion to Suppress on May 9, 2019, claiming the stop of the Taurus and subsequent arrest and search of Mr. Isles's person violated his constitutional rights.

**{¶9}** The trial court conducted a hearing on the suppression motion on May 21, 2019. The trial court issued a Judgment Entry on July 9, 2019, denying Mr. Isles's motion. On June 26, 2019, Mr. Isles entered a no contest plea. The trial court judge found him guilty and sentenced him to three years of community control. The trial court subsequently modified the sentence to include intensive supervision via a Judgment Entry filed on July 8, 2019.

## ASSIGNMENT OF ERROR

**{¶10}** "I. APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 14 OF THE OHIO CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT OVERRULED THE MOTION TO SUPPRESS."

**ANALYSIS**

{¶11} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). The trial court assumes the role of trier of fact during a suppression hearing and is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). If a trial court's findings of fact are supported by competent, credible evidence a reviewing court must accept them. (Citation omitted.) *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision satisfies the applicable legal standard. (Citations omitted.) *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), *overruled on other grounds*, 4th Dist. Pickaway No. 04CA25, 2005-Ohio-3492, ¶ 16.

{¶12} Three methods exist to challenge a trial court's ruling on a motion to suppress. First, appellant may challenge the trial court's findings of fact. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Second, appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, the appellate court can reverse the trial court for committing an error of law. *Williams* at 41. Third, appellant may argue the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When addressing the third type of challenge, an appellate court must independently determine, without deference to the trial court's conclusion, whether

the facts meet the appropriate legal standard in the given case. (Citation omitted.) *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶13} Here, Mr. Isles challenges the trial court's decision as to the ultimate issue raised in his Motion to Suppress. He maintains his constitutional rights were violated because there was no articulable belief that he was armed and/or dangerous or was engaged in criminal activity when Trooper Magistri ordered him out of the vehicle. In support of this argument, Mr. Isles points out he gave Trooper Magistri his correct social security number so his identity could be confirmed. Further, testimony at the suppression hearing proved he was not armed and dangerous. Finally, Mr. Isles claims testimony also established he was not involved with criminal activity when he was ordered out of the vehicle.

{¶14} Based on Mr. Isles's challenge we must independently determine whether the facts of the case warranted Mr. Isles's continued detention once Trooper Magistri verified his identity and confirmed he was not armed. Mr. Isles maintains at that point, he should have been permitted to leave the scene. We disagree.

{¶15} Initially, we note Mr. Isles does not challenge the stop of the vehicle, but rather his continued detention. However, a passenger may be detained just as the driver. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the U.S. Supreme Court held that once a vehicle is lawfully stopped, the driver may be ordered to exit the vehicle without violating the Fourth Amendment. *Id.* at 111, fn. 6. The government's "legitimate and weighty" interest in officer safety outweighs the "*de minimis*" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." *Id.* at 110-111. In *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997),

the U.S. Supreme Court extended the *Mimms* rule to passengers based on the same legitimate and weighty interest of officer safety. *Id*. at 414.

{¶16} Further, as explained by the Court in *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.E.2d 132 (2007), a passenger is seized just as a driver the moment a car stopped by the police comes to a halt on the side of the road. *Id*. at 263. A passenger's motivation to use violence during the stop to prevent apprehension for a crime graver than a traffic violation is just as great as that of the driver. *Wilson* at 414. Further, because the "passengers are already stopped by virtue of the stop of the vehicle, * * * the additional intrusion upon them is minimal." *Id*. at 409.

{¶17} Also, an officer is permitted to request identification from a passenger in a vehicle that is lawfully stopped for a traffic violation without violating the Fourth Amendment. (Citations omitted.) *State v. Roseberry*, 5th Dist. Licking No. 2009-CA-78, 2010-Ohio-1112, ¶ 21. "Interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." (Citations omitted.) *Id*. Rather, requesting identification from a passenger is merely "routine questioning" that is "but a minimal intrusion." (Citations omitted.) *Id*.

{¶18} Here, we find no Fourth Amendment violation occurred with Mr. Isles's continued detention. "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. *(Citation omitted.) See id* at *¶ 23*. Further, an officer's inquiries into matters unrelated to the reason for the stop does not convert the encounter

into something other than a lawful seizure as long as the inquiries do not measurably extend the duration of the stop. (Citations omitted.) *Roseberry* at ¶ 23.

**{¶19}** Further, " 'the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop * * *'" (Citation omitted.) *State v. Batchili*, 113 Ohio St.3d 403, 865 N.E.2d 1282, 2007-Ohio-2204, ¶ 15. Finally, we note that a canine walk-around of a vehicle that occurs during a lawful stop and does not extend beyond the period necessary to effectuate the stop and issue a citation does not violate an individual's constitutional rights. *Roseberry* at ¶ 17, citing *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Importantly, "if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." (Citations omitted.) *State v. Whitman*, 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 293, ¶ 10 (5th Dist.).

**{¶20}** Applying the above case law to the testimony elicited at the suppression hearing, we conclude Mr. Isles's constitutional rights were not violated by his continued detention after Trooper Magistri verified his identity and confirmed he was unarmed. At that point, Trooper Magistri had requested a canine search. (Supp.T. at 17) Diesel and his handler from the Canton City Police Department arrived on the scene within nine minutes of the initial stop. (*Id.* at 22) The request for the search did not extend the stop beyond what was necessary to issue a citation.

**{¶21}** Even after Trooper Magistri confirmed Mr. Isles's identity and the fact that he was not armed, Trooper Magistri was still investigating as part of the initial stop. As he

testified to at the suppression hearing, he could not confirm the driver's identity due to the fake social security number she provided. (*Id.* at 18) Further, Trooper Magistri had decided to tow the vehicle because neither the driver nor Mr. Isles could identify its owner. (*Id.* at 19) Thus, despite the confirmation of Mr. Isle's identity and the fact that he was unarmed, it was the driver's and Mr. Isles's conduct that caused the investigation to be extended. Further, once Diesel arrived on the scene and alerted to drugs in the vehicle, Trooper Magistri had reasonable, articulable suspicion to further extend Mr. Isles's detention and search the vehicle for drugs. This testimony supports the conclusion the trial court did not err when it denied Mr. Isles's Motion to Suppress.

{¶22} Mr. Isles's sole assignment of error is overruled.

{¶23} For the foregoing reasons, the judgment of the Common Pleas Court, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 0515