[Cite as *State v. Bilal*, 2022-Ohio-3892.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| HUSSEIN BILAL | : | Case No. 22CA00004 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Court of Common
                                       Pleas, Case No. 21-CR-00299




JUDGMENT:                              Reversed




DATE OF JUDGMENT:                      October 31, 2022




APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

ROBERT N. ABDALLA                      MICHAEL R. DALSANTO
20. S. Second Street                   P.O. Box 98
Newark, OH  43055                      Newark, OH  43058

*Wise, Earle, P.J.*

{¶ 1}   Plaintiff-Appellant state of Ohio appeals the January 25, 2022 judgment of the Licking County Court of Common Pleas which granted Defendant-Appellee Hussein Bilal's motion to suppress.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On May 23, 2021 Newark Police Officer Trey Brown noticed a silver Ford Fusion bearing a temporary tag which he could not read as it appeared to have something covering the numbers.  Brown initiated a traffic stop and was still unable to read the tag until he got out of his cruiser and stood at the rear of the Fusion. He observed the tag had been secured with a clear adhesive tape which had peeled up in places and become dirty, making the tag difficult to read. Brown relayed the tag number to dispatch then approached the passenger side of the vehicle.  Brown told the occupants why he had pulled them over and asked the driver for his operator's license. Nearly contemporaneous to Brown's inquiry, dispatch advised the temporary tag on the Fusion was expired. Brown then discovered the driver had an expired operator's license and no one else in the car could produce identification. The vehicle was therefore impounded. During an inventory search, a loaded firearm was located under the front passenger seat where appellee was seated.

{¶ 3}   On June 2, 2021, the Licking County Grand Jury returned an indictment charging appellee with improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree.

{¶ 4}   Appellee pled not guilty to the charge and on October 13, 2021, filed a motion to suppress. Appellant argued among other things that there was no probable cause or reasonable suspicion to initiate a traffic stop, and even if there were, the stop

exceeded the scope and duration of a legal traffic stop. Appellant filed a response on January 12, 2022.

{¶ 5}   A hearing was held on appellee's motion on January 19, 2022. The state presented testimony from Officer Brown, elicited the above outlined facts, and played portions of the dash camera video of the stop. At the conclusion of the hearing, the trial court ruled from the bench finding:

> Well, here's why I have to grant the motion. For some reason, and I can't put my finger on when, Ohio changed their temporary tags. It used to be you'd get a big tag like this (indicating size of tag), it'd be on the back, it's visible. They went to some condensed version of temporary tags, I'm saying this antidotally, but they're very very hard to read. They are. I'm not disputing that at all
>
> I don't think there's a problem with the initial stop, but when the officer gets to the point where he sees what the license plate is and can read it, the basis for the stop is, um, extinguished. And I'm basing this on State v. Chatton, 11 Ohio St.3d 59, which the critical part of the case says "Consequently, where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag, which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of the driver's license – of the driver's license absent some specific and articulable facts that the detention was reasonable." I think Chatton is the case here. Now

Chatton doesn't have much applicability as it used to because the legislature changed the law on how to display tags. That's not relevant here. The evidence was that the temporary tag was where it was supposed to be, that he had a difficult time reading it. I think that gives him the right to say "Hey, I'm going to pull this guy over." But once he gets to the point where he can see it, Chatton says you can't keep, um – that's the way I interpret this code section here. And I'm looking at 4503.182, which talks about temporary tags and then 4503.21.

The Officer's testimony that – that he couldn't see it but that as he approached, um, he described a part of it as "peeling off" and then he described that as "clear masking tape." There's no evidence the driver did anything or anyone else did anything to obscure or obstruct visibility. Probably just an accumulation of grit, grime, dust, and also the age of a temporary tag that's made out of cardboard. But I think the critical distinction on this case is that the officer got close enough to it that he could read it, radio it in that – that terminates the stop under Chatton.

So, for those reasons, I will – I don't need to address the other issues in the case because of my resolution of this matter. I'll a – for these reasons I'll grant the Defendant's motion to suppress.

{¶ 6} Transcript of suppression hearing 41-43.

{¶ 7}   On January 20, 2022, the state filed a motion to reconsider. On January 25, 2022, the trial court issued its judgment entry granting appellee's motion to suppress. On January 27, 2022, appellant filed its notice of appeal. On February 2, 2022, the trial court issued a judgment entry denying appellant's motion to reconsider.

{¶ 8}   The matter is now before this court for consideration. Appellant presents three assignments of error for our consideration as follow:

I

{¶ 9}   "WHETHER THE COURT HAD AUTHORITY TO ISSUE A JUDGMENT ENTRY DENYING THE STATE'S MOTION TO RECONSIDER AND WHETHER THAT JUDGMENT ENTRY CONSTITUTES A PART OF A RECORD ON THIS INSTANT APPEAL."

II

{¶ 10} "WHETHER LAW ENFORCEMENT OFFICERS HAD A SUFFICIENT BASIS TO INITIATE A TRAFFIC STOP."

III

{¶ 11} "WHETHER OFFICERS IMPERMISSIBLY EXPANDED THE TRAFFIC STOP BY REQUESTING THE DRIVER'S AND VEHICLE OCCUPANT'S INFORMATION."

IV

{¶ 12} "WHETHER THE BASIS FOR THE TRAFFIC STOP TERMINATED UPON OFFICER BROWN BEING ABLE TO READ THE TEMPORARY TAGS."

II

{¶ 13} For ease of discussion, we address appellant's assignments of error out of order. Appellant's second assignment of error appears to be more a statement than an

argument or assignment of error. In it, appellant points out the trial court found Officer Brown possessed reasonable suspicion to initiate a traffic stop. As set forth in our statement of facts above, the trial court did find reasonable suspicion existed for the stop. T. 41. Neither party disputes this fact. We will therefore focus on whether the stop was improperly expanded.

### III, IV

{¶ 14} In its third and fourth assignments of error, appellant argues Officer Brown had justification to continue the stop after being able to read the temporary tag, and that *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984) is therefore inapplicable to this case. Under the unique facts of this case, we agree.

### Standard of Review

{¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact, in which case an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently

determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determination of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 16} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

Traffic Stops

{¶ 17} As stated above, the trial court found the initial stop was valid and neither party disputes that fact. At issue here is whether appellee was properly detained after Officer Brown was able to read the temporary tag on appellee's vehicle.

{¶ 18} " '[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning.' " *State v. Elliot,* 5th Dist. Guernsey No. 18 CA 22, 2019-Ohio-4411, ¶ 21 quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12 quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2nd Dist.1988). The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *State v. Latona*, 5th Dist. Richland No. 2010-CA-0072, 2011-Ohio-1253, 2011 WL 917728, ¶¶ 20-21 quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); see also, *State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995). The measure of the time

period includes the time sufficient to run a computer check of the driver's license, registration, and vehicle plates. *State v. Elliot*, 2019-Ohio-4411, ¶ 21 citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17 citing *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Additionally, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591(9th Dist.1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). See also *State v. Whitman*, 184 Ohio App.3d 740, 2009-Ohio-5647, 922 N.E.2d 293 (5th Dist.); *State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, ¶ 21.

{¶ 19} *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984) involved a traffic stop factually similar to the matter at bar. In *Chatton*, an officer stopped a vehicle which displayed neither front nor rear license plates. Upon approaching the car however, the officer observed a valid temporary tag on the car's interior rear deck. *Id* at 59. Although the officer realized upon observation that the temporary tag was valid, he proceeded to inquire into the status of the defendant's driver's license and discovered his license was suspended. The defendant was therefore placed under arrest for driving under suspension. *Id.* Upon searching the vehicle, the officer found a loaded gun underneath the driver's seat. *Id.*

{¶ 20} The defendant was indicted for carrying a concealed weapon and moved to suppress evidence of the gun on the basis the search of his vehicle was unlawful. *Id.* at 59-60. The trial court overruled the motion to suppress. *Id.* at 60. The defendant appealed

the ruling and the court of appeals reversed the conviction, finding the trial court erred in not suppressing the evidence of the gun. *Id.* The court of appeals reasoned any reasonable suspicion the defendant was violating the law was extinguished upon the officer's observance of the temporary tag and the detention of the defendant beyond that moment was unlawful. *Id.* The Ohio Supreme Court accepted jurisdiction.

{¶ 21} In agreeing with the court of appeals, the Supreme Court stated:

> In our view, because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to the random detentions struck down by the Supreme Court in *Delaware v. Prouse*, supra.

{¶ 22} *Chatton* at 63.

{¶ 23} The Court then concluded, "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." *Id.*

Application of <em>Chatton</em> to the Instant Matter

{¶ 24} Brown testified that after he initiated the traffic stop, he was still unable to read the temporary tag on the Fusion. He had to get out of his cruiser and approach the vehicle in order to read the tag and call in the number into dispatch. T. 9. After he did so, he approached the passenger side of the Fusion, told the three occupants why he had pulled them over, and asked the driver for his operator's license. State's exhibit 1. Under

*Chatton*, Brown could approach the occupants and tell them why he pulled them over, but would then have to release them "absent some specific and articulable facts that the detention was reasonable." *Chatton* at 63.

{¶ 25}  But this matter differs from *Chatton* in one important regard – appellee's temporary tag was expired and Officer Brown was advised of the same 47 seconds into the stop. State's exhibit 1. While it is true Brown asked the driver of the Fusion for his license, news of the expired tag came nearly contemporaneously. *Id.* We find this is a specific and articulable fact making continued detention reasonable.

{¶ 26} We further find that application of *Chatton* under this particular set of facts would produce an absurd precedent for the officer in the field. In this instance, it would require Brown to send the occupants of the Fusion on their way and then initiate a second traffic stop based on the officer's knowledge of the expired tag.  We find such a result unrealistic and decline to extend the holding of *Chatton* to the facts of this case.

{¶ 27} We find Officer Brown did not improperly extend the traffic stop after being able to read the temporary tag. The third and fourth assignments of error are sustained.

I

{¶ 28} Given our resolution of this matter, the question of whether or not the trial court's judgment entry denying the state's motion for reconsideration is a part of the record on appeal is moot and we therefore decline to address appellant's first assignment of error.

{¶ 29} The judgment of the Licking County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

By Wise, Earle, P.J.

Gwin, J. and

Delaney, J. concur.

EEW/rw

[Cite as *State v. Bilal*, 2022-Ohio-3892.]