[Cite as *State v. Braucher*, 2024-Ohio-811.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2023 CA 00038 |
| MICHAEL PATRIC BRAUCHER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No. 2022 CR 02547


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 7, 2024


APPEARANCES:

For Plaintiff-Appellee           For Defendant-Appellant

KYLE L. STONE                    D. COLEMAN BOND
PROSECUTING ATTORNEY             116 Cleveland Avenue, NW
LISA A. NEMES                    Suite 600
ASSISTANT PROSECUTOR             Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44701-1413

*Wise, J.*

{¶1}   Michael Patric Braucher, defendant-appellant, appeals from a judgment of the Stark County Common Pleas Court convicting him of aggravated possession of drugs. He presents one assignment of error asserting that the trial court erred in denying his motion to suppress.  For the reasons that follow, we overrule the assignment of error and affirm the trial court's judgment and his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On January 5, 2023, appellant, Michael Patrick Braucher, was indicted on one count of aggravated possession of drugs, a violation of R.C. 2925.11(A)(C)(1)(b) [F3] and one count of aggravated possession of drugs, a violation of R.C. 2925.11(A)(C)(1)(a) [F5].

{¶3}   He pleaded not guilty at his arraignment and filed a motion to suppress. The trial court conducted the suppression hearing on March 9, 2023.

{¶4}   One witness testified for the state, Sergeant Anthony Crabtree of the Massillon Police Department.  He testified that on November 14, 2022, while working road patrol on the midnight shift, he saw a vehicle with an extremely loud muffler accelerating down Lake Avenue, Massillon, Stark County, Ohio.

{¶5}   Sergeant Crabtree followed the vehicle in his cruiser heading eastbound on Lake Avenue approaching Wales Road.  The vehicle approached the traffic signal at the intersection of Lake Road and Wales Road.  The light was red and the vehicle did not make a complete stop behind the stop bar; the front tires of the vehicle were well past the stop bar – the solid white bar on the roadway pavement.  Sergeant Crabtree activated the

overhead lights on his cruiser to make a traffic stop. He had with him in his cruiser K9 Officer Luiz. The vehicle finally stopped after turning on Rotch Avenue.

{¶6} Sergeant Crabtree initially ran the license plate number on the vehicle through dispatch and it came through as belonging to a 2016 silver Honda registered to a female. The vehicle he stopped was a white Toyota. Sergeant Crabtree saw more than one occupant in the vehicle. He got out of his cruiser and went to the passenger-side window. His body camera and cruiser dash-cam video were activated. He knocked on the window and asked the driver to roll the window down. When he was told the window would not roll down, he asked permission to open the front passenger door. He was given permission to open the door and observed a male driver, later identified as appellant Braucher, and a female passenger in the front passenger seat.

{¶7} Sergeant Crabtree testified that he introduced himself and told the occupants why he stopped the vehicle – an extremely loud muffler and failure to make a complete stop behind the stop bar at the traffic light.

{¶8} Sergeant Crabtree testified that he asked for identification from the occupants; the female passenger provided it and Braucher did not, saying his identification was in a folder at home, not in his vehicle. Sergeant Crabtree then asked Braucher his name and he responded, "Michael Braucher".

{¶9} At that point, Sergeant Crabtree became alarmed for his safety when he saw a shell casing on the floor of the vehicle and multiple torches, one between Braucher's legs. Sergeant Crabtree testified that the torches, in his training and experience, are often used to ingest narcotics, especially methamphetamine. He called for backup.

{¶10}  Backup arrived and Braucher was asked to step out of his vehicle.  Braucher was checked for any illegal firearms on his person and Sergeant Crabtree found none. He asked Braucher to step over to his cruiser to talk with him. Sergeant Crabtree explained the "red flags" he was concerned with; no identification, and a shell casing on the floor of the vehicle.  Braucher told the Sergeant there was nothing "illegal" in the vehicle and that everything in the vehicle belonged to him.

{¶11}  Seeing some "red flags", Sergeant Crabtree told Braucher that he had a K9 officer with him and would have the K9 perform a drug sniff test on the outside of the vehicle. The female passenger was removed from the vehicle and K9 Officer Luiz and Sergeant Crabtree walked the perimeter of the vehicle.  K9 Officer Luiz alerted to the odor of narcotics at the front passenger door.  Meanwhile, another police officer ran a CJIS or OHLEG search for the social security number given by Braucher.  It came back with no outstanding warrants or prior record.

{¶12}  A search was performed on the interior of the vehicle including the glove compartment.  Several drug paraphernalia items were found including a digital scale, a baggie containing suspected drugs, a methamphetamine bong and meth pipe.  The glove box also contained a .357 handgun, holster and Braucher's identification.

{¶13}  Sergeant Crabtree testified he read Braucher his *Miranda*[1] rights and arrested him on suspicion of drug activity.  In all, twelve to fourteen minutes elapsed from the initial stop to the discovery of drugs.

{¶14}  The suspected methamphetamine was sent to the crime laboratory for testing and came back positive for over eight grams of methamphetamine.

---

[1] *Miranda v. Arizona,* 384 U. S. 436, 86 S.Ct. 1602 (1966).

**{¶15}**  The state rested its case with the admission of state's exhibits 1 and 2, the dash-cam video and body-cam video.

**{¶16}**  The trial court noted that it would be overruling the motion to suppress and would put its findings in writing.  On March 13, 2023, it entered a judgment entry overruling the motion to suppress with three specific findings.  First, it found that the stop of the vehicle Braucher was driving was justified by the traffic violations that Sergeant Crabtree observed.  Second, it found that the time that passed between the K9 Officer detecting the drugs and the initial stop was reasonable.  Third, it found that probable cause existed for the subsequent search of the vehicle and the glove box where methamphetamine was found.

**{¶17}**  On March 15, 2023, Braucher returned to the trial court for a change of plea hearing. Braucher entered a plea of "no contest" to the offenses of aggravated possession of drugs [F-3] and aggravated possession of drugs, [F-5].  He also signed a Crim. Rule 11(C) form which contained his written plea of "no contest" along with the potential sentences for such a plea.  The trial court accepted his plea of "no contest" and incorporated the evidence that was submitted by the state at the suppression hearing. The trial court then found Braucher "guilty" of the crimes of aggravated possession of drugs [F3] and aggravated possession of drugs [F5].

**{¶18}**  Braucher was sentenced to a period of three years of community control with monitoring by Intensive Supervised Probation, Judgment Entry March 22, 2023.

**{¶19}**  Braucher filed an appeal setting forth the following assignment of error:

## ASSIGNMENT OF ERROR

{¶20} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."

## LAW AND ANALYSIS

{¶21} In his sole assignment of error, Braucher contends that the trial court erred in denying his motion to suppress.  He maintains the traffic stop was unconstitutional and not supported by reasonable and articulable suspicion because there was no traffic violation when his vehicle was halfway across the stop bar at the traffic light, and the arresting officer cited the wrong code section in his citation.  Braucher also contends that the loud muffler was a pretext for the stop because it was not loud enough to prevent conversations as evidenced by the body camera entered as an exhibit.  Braucher also claims the duration of the stop was excessive, was unreasonable and led to an illegal seizure.   We disagree and affirm the findings of the trial court.

### *Standard of Review*

{¶22} "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi,* 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶23}** As the Ohio Supreme Court explained:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact, if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

**{¶24}** (Citations omitted). *Burnside* at ¶8.

**{¶25}** Because the facts in this case are not in dispute, we independently review the trial court's conclusion that appellant's motion to suppress should be denied because Sergeant Crabtree had a reasonable and articulable suspicion to stop Braucher's vehicle and extend the stop for a K9 sniff.

*Unreasonable search and seizure*

**{¶26}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson,* 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *Id.*

**{¶27}** Searches and seizures conducted without a warrant are per se unreasonable under the Fourth Amendment, subject only to a few specific and well-established exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98. In this case, Sergeant Crabtree of the Massillon Police Department initiated a traffic stop without a warrant.

*Constitutionality of the Traffic Stop*

**{¶28}** A traffic stop initiated by a law enforcement officer constitutes a seizure under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1966). Thus, a traffic stop must comply with the Fourth Amendment's requirement of general reasonableness based on a totality of the circumstances. *Id.* at 810.

**{¶29}** "... [I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8. Even if the officer has an ulterior motive, a traffic stop is valid if the action complained of was permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996); *State v. Martin,* 5th Dist., Stark No. 2018CA00119, 2019-Ohio-4934, ¶ 19.

**{¶30}** In this case, Sergeant Crabtree testified that he was drawn to the Braucher vehicle by the loud muffler noise. When he followed the vehicle, he observed that Braucher did not stop behind the stop bar at the traffic light at the intersection of Lake Avenue and Wales Road. The trial court noted that the dash camera and body-cam video supported the Sergeant's credibility. The loud muffler could be heard on the video and

approximately half of the vehicle was past the stop bar before coming to a complete stop. Judgment Entry, March 13, 2023 at 1.

**{¶31}** With regard to the stop bar violation, appellant makes two arguments. One, he argues that this Court has not established a "bright line test" on stop bar violations. This Court has held that a stop bar violation is a legitimate reason for an officer to stop a vehicle under facts similar to the case here. In *State v. Goss,* 5th Dist., Ashland No. 16 COA 023, 2017-Ohio-161, (J. Delaney dissent), this Court approved a stop where the officer observed the appellant's pick-up truck with its engine compartment beyond the stop line and the rear wheels of his vehicle behind it, such that appellant's "driver door was on top of the stop bar." *Id.* at ¶ 2. Similarly here, Sergeant Crabtree testified and the trial court found that "approximately half of the vehicle is past the stop bar prior to the car coming to a stop." Finding the holding in *Goss* applicable, we reject appellant's argument.

**{¶32}** Second, appellant argues that Sergeant Crabtree issued a citation to Braucher under the wrong code section number and therefore the stop bar violation was not a legitimate reason to stop him. Braucher was cited for a stop bar violation under R.C. 4511.43(A) [stop bar violation at a stop sign] instead of a violation under R.C. 4511.13(C) [stop bar violation at a traffic light]. This Court has held that a police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop. *State v. Martin, supra,* ¶ 20 ("It is well established that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense."); *State v. Mays, supra,* ¶ 17 ("An officer is not

required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.")

**{¶33}** So, too, the language in both R.C. 4511.43(A) ["shall stop at a clearly marked stop line"] and R.C. 4511.13(C)(1)(a) ["shall stop at a clearly marked stop line"] are essentially the same.  Therefore, appellant was not prejudiced by Sergeant Crabtree's citation section error.  The penalty was the same and the elements are essentially the same – a stop bar violation.  *State v. Deacey,* 2nd Dist., Montgomery No. 27408, 2017-Ohio-8102, ¶ 25 (holding that trial court's amendment of stop bar violation at stop sign to stop bar violation at traffic light was not error because both were violations for failure to stop at a clearly marked stop bar).

**{¶34}** In short, the evidence here is the same whether Braucher stopped at a red light or a stop sign.  The issue was whether Braucher's vehicle or part of it stopped before or after a stop bar. So, too, there was an additional reason to stop Braucher's vehicle – the loud muffler which was hanging off the back of the vehicle. We affirm the trial court's holding and find that Sergeant Crabtree had reasonable suspicion to initiate the traffic stop and the initial traffic stop was constitutional.

*Duration of the Traffic Stop*

**{¶35}** Appellant next argues that the delay between the initial traffic stop and the K9 sniff by K9 Officer Luiz was unreasonably prolonged.  Sergeant Crabtree testified that the time between the traffic stop and canine officer's hit on the drugs in the glove box was between twelve and fourteen minutes. The trial court rejected appellant's argument finding that the delay was not unreasonable, given that the police were still attempting to

identify the defendant. Judgment Entry, March 13, 2023 at 2. We agree and affirm the trial court's holding.

**{¶36}** During a legitimate traffic stop, a request for identification from a driver and any passengers, followed by a computer check of that information, does not constitute an unreasonable search and seizure, so long as the traffic stop is not extended in duration beyond the time reasonably necessary to effectuate its purpose. "Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States,* 575 U.S. 348, 355, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).

**{¶37}** "The detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Isles,* 5th Dist., Stark No. 2019 CA 00121, 2020-Ohio-3061, ¶ 19, quoting *State v. Batchili,* 113 Ohio St.3d 403, 865 N.E.2d 1282, 2007-Ohio-2204, ¶ 15.

**{¶38}** Finally, "a canine walk around of a vehicle that occurs during a lawful stop and does not extend beyond the period necessary to effectuate the stop and issue a citation does not violate an individual's constitutional rights." *Id.* at ¶ 19, citing *Illinois v. Cabales,* 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). "... If a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Id.* at ¶ 19 (Citations omitted.) *State v. Whitman,* 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 294 (5th Dist.), ¶ 10.

**{¶39}** In this case, Sergeant Crabtree testified and his body camera corroborated that Braucher claimed he did not have his identification and it was in a file folder because

he was trying to dispose of his vehicles. Later, after K9 Officer Luiz detected narcotics in the glove box, his identification was found along with a firearm and methamphetamine. Appellant's failure to provide his identification prolonged his detention.

{¶40} When Sergeant Crabtree observed a shell casing on the floor of the vehicle, a license plate that attached to a silver Honda instead of the white Toyota Braucher was driving, and torches typically used for drugs, he testified that this presented to him a "red flag" that required further investigation. He had K9 Officer Luiz with him in his cruiser and during the open-air canine sniff, Luiz alerted to the presence of narcotics in the area of the glove box.

{¶41} In all, from the time of the stop to the canine hit on the drugs, Sergeant Crabtree testified that twelve to fourteen minutes elapsed. The relevant question is "whether the dog sniff adds to the stop." *State v. Perkins,* 5th Dist., Richland No. 19CA38, 2019-Ohio-4328 ¶ 32, *appeal not allowed,* 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 926.

{¶42} We find that the stop was not prolonged any further than necessary given the "totality of the circumstances." In *State v. Williams,* 12th Dist., Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶¶ 18-19, the Court explained:

> The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel [the officer's] suspicions of criminal activity. Once the officer is satisfied that no criminal activity has occurred, then the vehicle's occupants must be released.
>
> In determining whether a detention is reasonable, the court must look at the totality of the circumstances. The totality of the circumstances

approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.

**{¶43}** (Citations omitted)

**{¶44}** We affirm the decision of the trial court and find that the length of the stop was appellant's own doing. He told Sergeant Crabtree that he had no identification which delayed the officer's investigation. K9 Officer Luiz was in the Sergeant's cruiser and there was no delay in waiting for a K9 to conduct the canine sniff. We conclude the duration of the stop was constitutional.

## CONCLUSION

**{¶45}** The trial court did not err when it denied appellant's motion to suppress. We overrule the sole assignment of error and affirm the trial court's judgment.

**{¶46}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

JWW/kt 0304